UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSEPH WALLIN,

        Plaintiff,

        Case No. 23-cv-1005-bhl

v.

TECOMET INC,

        Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Plaintiff Joseph Wallin alleges that Defendant Tecomet, Inc. (Tecomet) failed to properly compensate him for work that he performed, including by failing to pay overtime and by shaving time from his timesheets for pre-shift and post-shift hours worked, all in violation of the Fair Labor Standards Act (FLSA) and Wisconsin's Wage Payment and Collection Laws (WWPCL). He asserts his FLSA claims individually and on behalf of a collective of similarly situated employees under the FLSA. He similarly asserts his WWPCL claims both individually and on behalf of a proposed class of similarly situated employees under Federal Rule of Civil Procedure 23. Tecomet has moved to dismiss Plaintiff's complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Rule 12(b)(6). For the reasons stated below, the Court will grant the motion in part and deny it in part.

### FACTUAL BACKGROUND[1]

Tecomet, a manufacturer, hired Wallin in June 2023 as a machinist at its facility in Kenosha, Wisconsin. (ECF No. 1 ¶¶10, 26.) Wallin is a resident of Racine, Wisconsin. (*Id.* ¶7.) Plaintiff alleges that "Tecomet . . . is an entity incorporated in the State of Wisconsin with a principal office address of 115 Eames Street, Wilmington, Massachusetts 01887." (*Id.* ¶9.)

---

[1] This background is largely derived from Plaintiff's complaint, (ECF No. 1), the allegations in which are presumed true for purposes of the motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).

Tecomet disputes that it is incorporated in Wisconsin, insisting its place of incorporation is Massachusetts. (ECF No. 10 at 3; ECF No. 10-1.)

Tecomet paid Plaintiff on an hourly basis as a non-exempt employee for purposes of federal and state wage and hour laws. (ECF No. 1 ¶¶8–29.) During the three (3) year period immediately preceding the complaint, Plaintiff and all other hourly-paid, non-exempt employees regularly worked at or in excess of forty (40) hours per workweek. (*Id.* ¶33.) Plaintiff and the putative class were also "subject to Defendant's same unlawful policy, practice, custom, and/or scheme of shaving time (via electronic timeclock rounding) from [their] weekly timesheets for pre-shift and post-shift hours worked and/or work performed, to the detriment of said employees and to the benefit of Defendant." (*Id.* ¶37.)

During this same three-year period,

- Plaintiff and the putative class "performed compensable work immediately after 'clocking in' via Defendant's electronic timekeeping system at the beginning of their shifts each workday." (*Id.* ¶46.)
- Plaintiff and the putative class "performed compensable work immediately prior to 'clocking out' via Defendant's electronic timekeeping system at the end of their shifts each workday." (*Id.* ¶47.)
- "Defendant's pay policies and practices failed to compensate Plaintiff and all other hourly-paid, non-exempt employees for all hours actually worked and/or work performed each workday and each workweek." (*Id.* ¶49.)
- "Defendant directed, expected, and/or required Plaintiff and all other hourly paid, non-exempt employees to arrive to work on Defendant's premises and to commence work immediately after 'clocking in' via Defendant's electronic timekeeping system but prior to their scheduled shift start times." (*Id.* ¶50.)
- "Plaintiff's normal, customary, or typical daily routine prior to his scheduled shift start time was as follows: he arrived to work at Defendant and entered Defendant's building; he 'clocked in' via Defendant's electronic timekeeping system; he immediately began performing compensable work for the day after 'clocking in,' such as: checking the coolant on his machine; turning on his machine, turning on the CNC, the broach, and the parts washer; and completed the required 'Preventative Maintenance Check Sheet"; and he ensured that his machine for the day was running by at least his normal or customary shift start time of 6:00 a.m." (*Id.* ¶52). This was a similar process for others similarly situated. (*Id.* ¶53.)

During this time, Defendant also engaged in improper rounding practices. At the beginning and end of shifts each workday, Tecomet rounded its employees' actual hours worked and/or work performed as recorded, reflected, and represented in its electronic timekeeping system. (*Id.* ¶54.) At the start of each workday, Tecomet would forward the employees' actual start time to their

scheduled shift start times and did not compensate employees for engaging in this work. (*Id.*) Similarly, at the end of each workday, Tecomet would round employees' actual hours worked and/or work performed backwards to end time to their scheduled shift. (*Id.*) These practices were non-neutral and resulted in Defendant shaving time from Plaintiff's and all other hourly-paid, non-exempt employees' timesheets each workday and each workweek for pre-shift and post-shift hours worked and/or work performed as recorded, reflected, and represented via Defendant's electronic timekeeping system. (*Id.*) Wallin's employment with Tecomet ended in July 2023. (*Id.* ¶31.)

## LEGAL STANDARD

Tecomet seeks dismissal under both Rule 12(b)(2) and 12(b)(6). As to the former, a federal district court may not exercise jurisdiction over an out-of-state defendant unless "permitted by the forum state's long-arm statute and by the Due Process Clause." *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019) (citing *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012)). Once the defendant moves to dismiss the complaint under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If the defendant has submitted evidence that contradicts the jurisdictional allegations in the complaint, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783. The evidence submitted challenging personal jurisdiction may include affidavits and other supporting materials. *Id.* When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inference in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint will survive if it "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

Tecomet seeks dismissal of Wallin's complaint for three reasons. First, Tecomet contends this Court cannot exercise personal jurisdiction over the claims of putative FLSA collective members who were not employed by Tecomet in Wisconsin and, therefore, those claims must be dismissed. (ECF No. 10 at 12.) Second, Tecomet argues the complaint fails to sufficiently allege

an FLSA violation. (*Id.* at 16.) Tecomet's final allegation is that the complaint fails to sufficiently allege that the rounding policy was not neutral. (*Id.* at 19.)

I.  **The Court Does Not Have Jurisdiction Over the Claims of Out-of-State Members of the Putative FLSA Collective Action.**

The FLSA permits collective actions "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). In an FLSA collective action, members of the collective must "opt in" to the suit by providing written consent to join the suit before being bound by or benefiting from the result. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771–72 (7th Cir. 2013). In contrast, for most class actions certified under Rule 23(b)(3), class members are bound by the result unless they opt out of the suit. *Id.*

This Court can exercise personal jurisdiction over a corporation in two ways. First, the court can assert "general," or "all-purpose," jurisdiction over a defendant corporation in the state where the defendant is incorporated or headquartered. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). Second, a court may also exercise "specific," or case-based, jurisdiction over a corporate defendant so long as the plaintiff's claims "arise[ ] out of or relate[ ] to" the defendant's forum state activities. *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 (2014) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

Tecomet asserts that this Court lacks specific jurisdiction over any non-Wisconsin opt-in plaintiffs, citing *Bristol-Myers Squibb Company v. Superior Court of California, San Francisco County (Bristol-Myers)*, 582 U.S. 255 (2017). In *Bristol-Myers*, the Supreme Court concluded that in a mass-tort action brought in California state court, the state court lacked personal jurisdiction over claims brought by out-of-state plaintiffs against an out-of-state defendant. *Id.* at 269. The case involved over six hundred individual product-liability claims alleging injuries caused by Plavix, a Bristol-Myers' drug, where approximately 600 of those claims belonged to nonresidents from 33 other states. *Id.* at 258–59. To establish personal jurisdiction, the nonresidents argued that their claims resembled those of the California plaintiffs. *Id.* at 260. The Supreme Court reversed holding that the similarity of the nonresidents' claims to those of the residents provided "an insufficient basis for jurisdiction." *Id.* at 255. Despite having incurred the "same injuries" as the California plaintiffs in the same manner and from the same cause, the Supreme Court concluded that the nonresident plaintiffs had failed to show "a connection between the forum and the specific claims at issue." *Id.* at 256. The Supreme Court stated that "[s]ince our decision

concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 269–70 (citing *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 92, 102, n.5 (1987)).

Since the parties briefed this issue, the Seventh Circuit decided that *Bristol-Myers*'s rationale applies to a nation-wide FLSA collective action and concluded that a district court does not have personal jurisdiction over a defendant with respect to FLSA collective action claims brought by out-of-state opt-in plaintiffs. *Vanegas v. Signet Builders, Inc.*, --- F.4th ---, 2024 WL 3841024, at *9 (7th Cir. Aug. 16, 2024) (*Bristol-Myers* "teaches that a court must establish its jurisdiction over claims one at a time. The FLSA does not mark an exception to that rule, and neither does any loophole in [Federal] Rule [of Civil Procedure] 4."). In a 2-1 decision, the Seventh Circuit agreed with construction company Signet Builders that the Wisconsin court where an ex-employee filed a lawsuit seeking overtime pay only has jurisdiction over workers who were based in Wisconsin. *Id.* The majority held that because FLSA collective actions are "agglomerations of individual claims" rather than a single claim on behalf of a large group, such claims are more like a mass tort case as described in *Bristol-Myers* and less comparable to a traditional class action. *Id.* The ruling, however, does not bar broader lawsuits as a nation-wide case could be filed against a defendant corporation in the state where the company is based.

By so holding, the Seventh Circuit now aligns with the Third, Sixth, and Eighth Circuits. *See Fischer v. Fed. Express Corp.,* 42 F.4th 366, 385 (3d Cir. 2022), *cert denied*, 143 S. Ct. 1001 (2023) ("[D]istrict court[s] must have personal jurisdiction over the defendant with respect to each opt-in plaintiff's individual claim."); *Canaday v. Athem Cos, Inc.*, 9 F.4th 392, 396 (6th Cir. 2021), *cert denied*, 142 S. Ct. 2777 (2022) ("The principles animating *Bristol-Myer*'s application to mass action under California law apply with equal force to FLSA collective actions under federal law."); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 866 (8th Cir. 2021) (in the context of personal jurisdiction, finding that the district "court properly excluded [FLSA] claims with no connection to Minnesota"); *but see Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 97 (1st Cir. 2022) (holding that a district court can assert jurisdiction over "non-resident opt-in claims"). These courts hold that, although opt-in plaintiffs in an FLSA suit are not required to serve process on the defendant at all, a federal court's authority to exercise personal jurisdiction over the defendant with respect to the opt-in plaintiffs' claims is still limited by Federal Rule of Civil Procedure

4(k)(1)(A) and therefore also the Due Process Clause of the Fourteenth Amendment. *Vanegas*, 2024 WL 3841024, at *7; *Fischer*, 42 F.3d at 382; *Vallone*, 9 F.4th at 865–66; *Canaday*, 9 F.4th at 398–401. To the extent that any Tecomet employee who worked for the company outside of Wisconsin suffered any injury, that injury does not arise out of an act or omission within Wisconsin. *See Vanegas*, 2024 WL 3841024, at *3. Therefore, the Court will grant Tecomet's motion to dismiss, to the extent Plaintiff's complaint seeks to assert claims on behalf of out-of-state members of the putative FLSA collective action.

## II. Plaintiff's Claims Are Sufficiently Pleaded.

Defendant also argues that Plaintiff has failed to state a claim for relief. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests "the sufficiency of the complaint, not the merits of the case." *Brown v. Club Assist Rd. Serv. U.S., Inc.*, No. 12 CV 5710, 2013 WL 5304100, at *4 (N.D. Ill. Sept. 19, 2013) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). As required under Federal Rule of Civil Procedure 8(a) and the pleadings standards articulated in *Twombly* and *Iqbal*, the complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" such that the complaint provides "fair notice" to the defendant of the claim and its grounds. *Twombly*, 550 U.S. at 555. The pleading need not include "detailed factual allegations" but the factual allegations, assumed to be true, must raise the right to relief "above the speculative level." *Id.* The pleading must "state a claim to relief that is plausible on its face" by pleading factual allegations that allow the court to make a "reasonable inference" regarding the liability of the defendant. *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must include enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests. *See Twombly*, 550 U.S. at 555 (2007); *Iqbal*, 556 U.S. at 698 (2009).

In the FLSA context, "plaintiffs need not necessarily plead specific dates and times that they worked undercompensated hours" but should "provide some factual context that will nudge their claim from conceivable to plausible." *Hirst v. Skywest, Inc.*, 910 F.3d 961, 966 (7th Cir. 2018) (quoting *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017)). "A claim for overtime wages is plausible if the plaintiff's factual allegations support a reasonable inference that there was at least one workweek in which he worked more than forty hours and did not receive overtime pay." *Frisby v. Sky Chefs, Inc.*, No. 19 C 7989, 2020 WL 4437805, at *5 (N.D. Ill. Aug. 3, 2020).

Here, the complaint alleges numerous specific details about the unlawful failure to properly calculate overtime satisfying notice pleading standards. Plaintiff alleges that "Defendant established Plaintiff's and all other hourly-paid, non-exempt employees' work schedules," (ECF No. 1 ¶21), that "Plaintiff and all other hourly-paid, non-exempt employees regularly worked at or in excess of forty (40) hours per workweek," (*id.* ¶33), and that "Defendant knew or had knowledge that Plaintiff and all other hourly-paid, non-exempt employees worked at or in excess of forty (40) hours per workweek." (*Id.* ¶34.) Plaintiff alleges that he was not compensated for all hours worked and/or work performed. (*See id.* ¶¶72–74.) The reasonable inference drawn from these allegations is that uncompensated work time was regularly in excess of forty (40) hours. As such, Plaintiff has sufficiently alleged a violation of the FLSA. Similar allegations have been found sufficient for pleading an FLSA overtime claim. *See Sadler v. D.W. Mertzke Excavating & Trucking, Inc.*, No. 19-CV-1339-SMY, 2020 WL 1674353, at *2 (S.D. Ill. Apr. 6, 2020) (finding allegations that plaintiff "worked over 40 hours a week and was not given overtime compensation" sufficient to overcome a motion to dismiss).

Plaintiff alleges that "Defendant directed, expected, and/or required Plaintiff and all other hourly-paid, non-exempt employees to arrive to work on Defendant's premises and to commence work immediately after 'clocking in' via Defendant's electronic timekeeping system but prior to their scheduled shift start times." (ECF No. 1 ¶50.) Examples of work Defendant required and Plaintiff "normally" and "customarily" performed prior to the start of his shift included "checking the coolant on his machine; turning on his machine, turning on the CNC, the broach, and the parts washer; and completed the required 'Preventative Maintenance Check Sheet. . . .'" (*Id.* ¶52.) Likewise, Plaintiff "normally" and "customarily" performed work required by Defendant after his shift such as "finishing assembly, counting parts, and cleaning his machine; he communicated with and/or de-briefed with other employees. . . ." (*Id.* ¶56.) Plaintiff's allegations establish that Defendant required Plaintiff and all other hourly-paid, non-exempt employees to perform compensable activities prior to their scheduled shift start time and after their scheduled shift end time. As noted by Plaintiff, Tecomet does not appear to dispute the compensability of these pre- and post-shift activities as either principal activities or activities which are integral and indispensable to Plaintiff's principal activities. (ECF No. 11 at 10.) Rather, Tecomet seems to suggest that in spite of the compensability of these activities, Defendant is not obligated to

compensate putative collective members because these pre- and post-shift activities were performed within the "rounding" window.

While Tecomet is correct that 29 C.F.R. § 785.48(b) notes that employers may round employees' shift start and stop times, the regulation also states that rounding is acceptable only if "used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." *Id.* Plaintiff has alleged Defendant did not compensate him for pre- and post-shift work. This supports a reasonable inference that Tecomet's practices were impermissible because they resulted in the failure to compensate employees for time actually worked. After the reviewing the allegations, the Court concludes that Plaintiff's allegations sufficiently apprise Defendant of the claims against it and state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678 (stating that to survive a motion to dismiss, a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Because Plaintiff's allegations satisfy this standard, the motion to dismiss for failure to state a claim is denied.

## CONCLUSION

Accordingly,

**IT HEREBY IS ORDERED** that Defendant's Motion to Dismiss, ECF No. 9, is **GRANTED IN PART and DENIED IN PART**. Defendant's motion to dismiss the FLSA claims of Plaintiffs whose claims are not met by specific personal jurisdiction is **GRANTED**. Defendant's motion to dismiss for failure to state a claim is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant file its response to Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(a)(4)(A).

Dated at Milwaukee, Wisconsin on August 23, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge